UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONTGOMERY BANK, N.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CV01334 ERW |
| ) | |
| FIRST HORIZON HOME LOAN ) | |
| CORPORATION and FIRST TENNESSEE ) | |
| BANK, N.A., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss Amended Complaint for Failure to State a Claim and for Improper Venue and Alternatively, to Transfer Venue to the U.S. District Court for the Middle District of Florida [doc. #19].

## I. BACKGROUND[1]

In March of 2007, Plaintiff Montgomery Bank ("Montgomery"), a national banking association with its principal place of business in Sikeston, Missouri, and Defendant First Horizon Home Loan Corporation ("First Horizon"), a Kansas corporation with its principal place of business in Fort Myers, Florida, entered into a Participation Agreement concerning a loan of $9 million from First Horizon to L & M GBC SXML, L.L.C. ("L & M"), a Florida limited liability company. The loan was for purposes of a real estate project in Florida, and was secured by collateral located in that state. Under the terms of the Agreement, Montgomery held a 13.333% undivided participating percentage interest in the loan, the loan documents, and all benefits derived from the loan, in return for which Montgomery advanced to First Horizon its pro-rata

---

[1] For purposes of this Motion to Dismiss, the facts alleged in Plaintiff's First Amended Complaint [doc. #14] are taken as true.

share of the amount disbursed to L & M, totaling $632,290.49. On May 31, 2007, approximately two months after Montgomery and First Horizon entered into the Participation Agreement, First Horizon merged into First Tennessee Bank National Association ("First Tennessee"),[2] a national banking association with its principal place of business in Memphis, Tennessee. On August 27, 2008, First Horizon was administratively dissolved by the Missouri Secretary of State based on its failure to file a statutorily-required annual report.

Montgomery now asserts that First Horizon, and by extension First Tennessee (collectively, "Defendants"), breached the Participation Agreement, and it also seeks a declaratory judgment defining Defendants' obligations under the Agreement.

## II.  DISCUSSION

In their Motion to Dismiss, Defendants argue that (1) Montgomery's claims against First Horizon should be dismissed for failure to state a claim because First Horizon no longer exists; and (2) Montgomery's claims against both Defendants should be dismissed because venue in the Eastern District of Missouri is improper under 28 U.S.C. § 1391. In the alternative, Defendants request a transfer of venue to the Middle District of Florida, Orlando Division, for the convenience of the parties and witnesses, and in the interest of justice.

### A.  *Failure to State a Claim*

First Tennessee asserts that Montgomery's claims against First Horizon should be dismissed because First Horizon does not exist and therefore no relief can be granted. Montgomery argues that First Horizon should remain as a defendant because its former

---

[2] Defendants note that Montgomery incorrectly identified First Tennessee as "First Tennessee Bank, N.A." in its Amended Complaint.

shareholders may be held responsible for First Horizon's liabilities, to the extent any assets of the corporation were returned to shareholders following dissolution.

Although the circumstances of the merger between First Horizon and First Tennessee are difficult to ascertain at this juncture, based on the limited facts before the Court and the lack of any briefing on the issue, it appears that the National Bank Act governs the effect of the merger. *See* 12 U.S.C. § 215a. Nevertheless, the internal affairs doctrine, a conflict of laws principle, generally provides that the law of the state of incorporation governs a corporation's internal affairs – those "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). First Horizon is a Kansas corporation, and as such, Kansas law would govern the ability of a creditor to maintain a suit to recover assets from the shareholders of a dissolved Kansas corporation. As a matter of Kansas law, assuming that Montgomery could in fact pursue such a suit against First Horizon's former shareholders in these circumstances – given that First Horizon was not liquidated or dissolved but rather merged into First Tennessee – Montgomery would need to bring that suit against the specific shareholders under what is known as the "trust fund doctrine," not against the non-existent corporation. *See Carson v. Davidson*, 808 P.2d 1377, 1381-82 (Kan. 1991).

There is therefore no apparent basis for Montgomery to assert claims against First Horizon for either breach of contract or for a declaratory judgment concerning the Participation Agreement. First Horizon ceased to exist when it merged into First Tennessee, at which point First Tennessee assumed First Horizon's debts and liabilities, including its obligations with respect to the Participation Agreement. *See* 12 U.S.C. § 215a(e). Accordingly, First Horizon will be dismissed as a defendant from this suit.

### B. *Improper Venue*

First Tennessee contends that venue in the Eastern District of Missouri is improper under 28 U.S.C. § 1391, the general venue statute, and that Montgomery's claims should therefore be dismissed.

§ 1391(a)(1) provides that venue in a diversity suit is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." Pursuant to § 1391(c), "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced," and courts have treated national banks as corporations for purposes of this statute. *See Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 211 (3d Cir. 1984); *In re Rosenberger*, 400 B.R. 569, 574-75 (Bankr. W.D. Mich. 2008). The Supreme Court has also recently indicated, in commenting on a prior case involving a since-amended venue provision, that national banks and corporations receive the same venue treatment. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 316-17 (2006) ("[T]his Court's reading of the venue provision in [*Citizens & S. Nat'l Bank v. Bougas*, 434 U.S. 35 (1977)] effectively aligned the treatment of national banks for venue purposes with the treatment of . . . corporations.").

As such, venue in this forum is appropriate if First Tennessee "resides" in – i.e., is subject to personal jurisdiction in – Missouri, and it has conceded that it is, given that it waived the defense of lack of personal jurisdiction by failing to raise it in the pending Motion. *See* Fed. R. Civ. P. 12(h)(1); *Carlson v. Hyundai Motor Co.*, 164 F.3d 1160, 1163 (8th Cir. 1999). First Tennessee also acknowledges that it conducts some amount of business in Missouri, which would in any event likely be sufficient to establish the "continuous and systematic" business activity necessary for the exercise of general jurisdiction; First Tennessee does not suggest that its

Missouri contacts are merely "random, fortuitous, or attenuated," such that assuming personal jurisdiction over it would "offend traditional notions of fair play and substantial justice." *See Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 779 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)) (internal quotations omitted).[3]

The Court therefore concludes that venue is proper under § 1391(a)(1) because First Tennessee "resides" in Missouri for venue purposes, in that it has conceded that it is subject to the general jurisdiction of Missouri courts.

## C. *Transfer of Venue*

Defendants contend that the Court should transfer this case under 28 U.S.C. § 1404(a) to the Middle District of Florida, Orlando Division, because the events at issue took place in Florida and because a great majority of the relevant witnesses are located in that state. Montgomery asserts that the relevant factors for analyzing whether transfer is appropriate counsel in favor of keeping the suit in the Eastern District of Missouri.

§ 1404(a) provides district courts with the authority to transfer a civil case "to any other district or division where it might have been brought." In determining whether § 1404(a) transfer is warranted, the statute instructs courts to consider three factors: (1) the convenience of the parties, (2) the convenience of witnesses, and (3) the interest of justice. *See also Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997) (district court's analysis under §

---

[3] District courts exercise personal jurisdiction over nonresidents as permitted by the law of the forum state, and the Missouri long-arm statute, Mo. Rev. Stat. § 506.500, is liberally construed to extend personal jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. *See* Fed. R. Civ. P. 4(e); *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001); *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984) (en banc).

1404(a) requires a "case-by-case evaluation of the particular circumstances" and is not limited to the three enumerated factors). Federal courts generally give "considerable deference" to the plaintiff's choice of forum, and the party seeking transfer under § 1404(a) therefore typically bears the burden of demonstrating that transfer is necessary. *Id.* at 695.

The convenience of the parties is not a particularly compelling factor in these circumstances. Regardless of whether this case is litigated in Missouri or in Florida, one of the parties will be somewhat inconvenienced. The parties' respective headquarters are in Sikeston, Missouri and Memphis, Tennessee, both of which are clearly closer to Cape Girardeau, Missouri[4] than to Orlando, Florida. Nevertheless, both parties do operate branch offices in Florida, although Montgomery asserts that it does not have any Florida staff who were involved in this matter. In any event, however, the Court does not believe that the inconvenience of either forum would actually prejudice the ability of these two national banking associations to litigate this case. As such, the Court concludes that this factor does not weigh heavily in favor of granting or denying the requested transfer.

Turning to the convenience of witnesses, courts in this circuit have indicated that this is the most significant factor in considering the propriety of transfer under § 1404(a). *See, e.g.*, *Anheuser-Busch, Inc. v. City Merch.*, 176 F. Supp. 2d 951, 959 (E.D. Mo. 2001). Montgomery lists four witnesses located in Missouri, and one additional witness who was last known to reside in Florida. Montgomery further claims that its most important witness, Chief Credit Officer Ralph Green, is located in Missouri, and that he has dealt primarily with First Tennessee's witness Dale Maxfield, who is located in Memphis, Tennessee, not Florida. In addition to Mr. Maxfield, First

---

[4] Although Montgomery sought to file this case in the Southeastern Division of the Eastern District of Missouri, located in Cape Girardeau, due to a docketing error it was actually filed in the Eastern Division, located in St. Louis. The Court corrects this error below.

Tennessee lists six additional witnesses, and it claims that three of them, all located in Florida, "will" testify. The remaining four "may" testify, and First Tennessee states that it believes that they reside in Florida, although none of them currently works for First Tennessee and it therefore has not been able to verify their addresses. On balance, and giving proper deference to Montgomery's choice of forum, the Court finds that this factor does not weigh significantly in either direction because the majority of Montgomery's witnesses are in Missouri, while the majority of First Tennessee's are in Florida.

In determining whether the interest of justice favors transfer to a different forum, courts consider a wide variety of factors, including but not limited to the ability to compel the testimony of hostile non-party witnesses, the governing law, and the relative ease of access to sources of proof. *See, e.g.*, *Anheuser-Busch*, 176 F. Supp. 2d at 959; *Gen. Comm. of Adjustment GO-386 v. Burlington N. R.R.*, 895 F. Supp. 249, 252 (E.D. Mo. 1995). First Tennessee claims that it may require testimony from non-party witnesses in Florida, but, as noted above, it has not conclusively verified where any of those witnesses are located, which indicates to the Court that this is not a significant consideration. Likewise, both parties acknowledge that this breach of contract case is not likely to present any highly complex legal issues, and although Florida law may govern the agreement, the Court does not believe that this consideration, standing alone, necessitates transfer. Last, with respect to accessing sources of proof, the parties are also in agreement that this is not a document-intensive case, and that they can easily exchange photocopied documents, even if the majority of them are located in Florida. Thus, as with the preceding factors, the Court concludes that the interest of justice does not require transfer to the Middle District of Florida.

As such, the Court finds that First Tennessee has failed make the showing necessary to overcome Montgomery's choice of forum in the Eastern District of Missouri, as the relevant

factors in assessing whether to transfer a case under § 1404(a) – the convenience of the parties and witnesses, and the interest of justice – do not point significantly in the direction of either Missouri or Florida.

## III. CONCLUSION

Defendants' Motion will be granted in part and denied in part. Defendants have demonstrated that Montgomery's claims against First Horizon should be dismissed, because First Tennessee assumed First Horizon's obligations under the Participation Agreement when First Horizon merged into First Tennessee. With respect to venue, First Tennessee has failed to demonstrate that venue in the Eastern District of Missouri is improper. First Tennessee, as a national banking association, is treated as a corporation for venue purposes, and the venue statute provides that corporations "reside" wherever they are subject to personal jurisdiction. Venue is therefore proper in this forum under 28 U.S.C. § 1391(a)(1) – providing for venue in a judicial district in which any defendant "resides" – because First Tennessee has conceded that it is subject to personal jurisdiction in Missouri. Last, the Court was not persuaded that transfer of venue under 28 U.S.C. § 1404(a) to the Middle District of Florida is warranted, as First Tennessee has failed to establish that the Florida forum would be significantly more convenient for the parties or witnesses, or that transfer is otherwise necessary in the interest of justice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Amended Complaint for Failure to State a Claim and for Improper Venue and Alternatively, to Transfer Venue to the U.S. District Court for the Middle District of Florida [doc. #19] is **GRANTED, in part** and **DENIED, in part**. Defendants' Motion is granted with respect to the request that Montgomery's claims against Defendant First Horizon Home Loan Corporation be dismissed, and is otherwise

8

denied.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall transfer this case to the Eastern District of Missouri, Southeastern Division, as it was improperly filed in the Eastern Division due to a docketing error.

Dated this 26th Day of April, 2010.

                                                                                    _____
                                                                                    E. RICHARD WEBBER
                                                                                    UNITED STATES DISTRICT JUDGE